## Case No. 12,362.

### SARGENT et al. v. CARTER.

[1 Fish. Pat. Cas. 277;[1] 21 Law Rep. 651; 11 Month. Law Rep. 651.]

Circuit Court, D. Massachusetts. May, 1857.

PATENTS—PROVISIONAL INJUNCTION—IDENTITY OF PATENTS—SPECIFICATIONS—AFFIDAVITS OF EXPERTS.

1. A provisional injunction will not be granted when the defendant has letters patent for the same invention as the plaintiffs', which are prima facie valid.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

2. But the court will compare the two specifications, to ascertain if they really cover the same thing.

3. It is the duty of an inventor to describe in his specification each substantially different modification of his invention which he has made.

4. The ex parte affidavits of experts considered.

5. Possession as a ground for a provisional injunction before a trial at law.

In equity. This was an application [by James Sargent and others] for a provisional injunction to restrain the defendant [Charles P. Carter] from infringing upon letters patent for "improvement in apple-paring machines," granted to James Sargent and D. P. Foster, as assignees of Ephraim L. Pratt, October 4, 1853 [No. 10,078].

C. Devens and G. T. Curtis, for complainants.

Causten Browne, for defendant.

CURTIS, Circuit Justice. This is an application for a temporary injunction to restrain the defendant from making and selling machines for paring apples and other vegetables, containing an improvement for which letters patent were granted to the complainants, bearing date October 4, 1863.

It is proved, and not denied, that the defendant has made a considerable number of machines like the one produced at the hearing, and marked P; and that he is under a contract with a wholesale dealer in such articles, to make and sell to him a large number of them. So far as respects the improvement patented to the complainants, this machine maked P is not distinguishable from those, the sales of which were held by me to be infringements of the complainants' patent, in the two cases of Sargent v. Larned [Case No. 12,364], in this district, and Sargent v. Seagrave [Id. 12,365], in Rhode Island. I see no cause to change the opinion then formed; and I accordingly hold that machines like that marked P, made by the defendant, contain in substance the improvement described and claimed by the complainants in their specification; and that the making or selling thereof is an infringement of the exclusive right which their letters patent purport to grant.

But it is insisted by the defendant that he was himself the original and first inventor of the improvement patented to the complainants; that letters patent were granted to him, for an apple-paring machine, on the 16th of October, 1849, which should have specified and claimed the particular improvement now in question; that by accident it failed to do so; but that on the 12th day of August, 1856, those letters having been surrendered, new letters were issued, in which the mistake was corrected, and the same improvement patented to the complainants was described and claimed, and the exclusive right thereto granted to him.

If this be so the motion must be denied. Whether it be so, can be ascertained by comparison of the complainants' specification and claim with the corrected specification and claim of the defendant. To make this comparison we must first determine with precision what was the thing patented by the complainants.

The claim of the complainants is as follows: "Hanging or connecting the block, which carries the knife, to the rod which carries said block, so that the block and knife can vibrate in one or either direction (by means substantially such as are herein described, or their equivalents), so as to allow the knife to vibrate and accommodate itself to any irregularity in the surface of the apple or vegetable pared, substantially as described."

It has been argued that this is either a claim for the precise devices described, or a claim for producing so much of this oscillating movement of the knife as is essential to produce the desired effect.

I do not adopt either of these views. I do not consider it a claim for a motion of the knife, but for described means, whereby an oscillating movement is produced by the action on the knife of the varying surfaces of the fruit; and I do not consider the patent limited to the identical means described, but that its language extends it and the law permits its language to extend it, to such other devices as are, within the meaning of the patent law, substantially the same as those described.

Thus construed, the thing patented by the complainants is such a connection, between the knife-block and its carrying arm, as permits the knife to oscillate in either direction, according to the pressure which the knife receives from the varying surfaces of the fruit, and all other devices which, though different in form, accomplish the same end by the use of substantially the same means.

Turning to the defendant's specification, it appears that so much of it as relates to this subject is as follows: "In order that the knife may accommodate itself to the uneven surface of the apple or other article to be pared, more easily and exactly than could take place were it held rigidly, and only permitted to move as it was guided by the rack bar P, and sector O, it is necessary that it be capable of a slight play around its axis, independent of the motion imparted to it by the machinery which actuates it. This I accomplish in the following manner." He then directs that two projections or ears on the rack bar are to be wider apart than the width of a lever inserted between them to give motion to the rack bar, so that the lever may have some play between the ears; and further, that the cogs on the rack bar and on a sector attached to the socket of the knife arm should be made smaller than the spaces in which they play, and thus the knife arm may be allowed some motion independent

of the sector; and the claim is, "giving to the knife a slight play around its axis, independent of the mechanism which vibrates it, for the purpose herein set forth."

The question is, whether what is here described and claimed does accomplish the same end as the complainants' improvement, by the use of substantially the same means. The means described and claimed by the complainants are such that the knife vibrates on its mathematical axis, in either direction, according to the pressure received from the varying surface of the fruit.

Do the defendant's devices accomplish this end? It is manifest on inspection of the machine, that though the looseness of gearing described by the defendant permits an oscillation of the knife arm when the machine is not in action, yet, when power is applied, the play of the lever between the ears, and of the cogs on the rack bar and sector, is taken up at the moment when the parts of the machine are brought to their respective bearings so as to transmit force and produce motion; and that while the force is thus transmitted and the machine is in motion, there can be no backward play against that force. These devices, therefore, allow no movement of the knife arm in one direction, against what is termed the feed of the machine. Nor am I able, after an attentive examination, to perceive any force generated while the machine is in action, to give motion to the knife arm in advance of the feed. It is sworn positively by Mr. Renwick, an expert, whose affidavit has been read by the complainants, and who testifies not only from an inspection of the structure of the machine, but from experimental trials of it, that there is not, and can not be, any movement of the knife arm in advance of the feed while the machine is in action.

The defendant has produced the affidavits of two experts, who testify that, in their opinion, the devices described and claimed in the defendant's patent, are substantially the same as those of the plaintiffs'; but they do not seem to have had their attention directed to the points adverted to by Mr. Renwick. If they had been informed what was the true meaning of the plaintiffs' claim as now construed by the court, and had been asked whether the knife in the defendant's machine could vibrate against as well as in advance of the feed when the parts were in motion, I can not, as now informed, suppose they would have differed materially from the opinions given by Mr. Renwick. Widely as experts differ in opinion in the trial of patent causes, those differences are almost always traceable to the assumption of different postulates; their opinions differ because they are given on substantially different cases. When their minds can be drawn to the same points, and they use the same words in the same sense, they rarely differ, so far as my experience extends. When their opinions are expressed in ex parte affidavits, and there is no

opportunity for the court to ascertain in what sense they use important words, nor what facts they take into view, nor what standards of comparison they assume, their opinions are of comparatively little use in guiding the court to a safe conclusion.

The result at which I have arrived on this part of the case is, that the defendant has failed to satisfy me that what is described and claimed in his letters patent is substantially the thing patented by the complainants. A more full investigation, such as can be had when the experts are produced on the stand, may produce a different result. This opportunity the defendant will have.

Besides what is described and claimed in his specification, the defendant insists he also invented and reduced to practice several modifications of the machine, the object of which was the same as the plaintiffs attained, by the means patented by them, and that these modifications were, in substance, the thing patented by the plaintiffs. One of these was, to make the arm which carried the knife, sufficiently flexible to admit of tortion; and the allegation is that the irregular surfaces of the fruit, when pressed on by the knife, caused the arm to be twisted, and thus the knife oscillated in either direction. It is controverted by the affidavit of Mr. Renwick, that such is the effect produced on the knife; and he swears he speaks not only from his knowledge of the forces applied, and the resistance made to those forces, but from actual and repeated experimental trials.

There are facts in the case which tend to support his statement. The defendant has described no such device in his reissued letters patent, the specification whereof was prepared since the litigation under the plaintiffs' patent was begun. It would seem that if he was the inventor of a device which secured a sufficiently free oscillation of the knife in either direction, he would have there described it. He was under a positive duty to do so. The sixth section of the patent act of March 3, 1836, requires the patentee of a machine to "fully explain the principle, and the several modes in which he has contemplated the application of that principle, or character, by which it may be distinguished from other inventions." One distinctive feature of the machine patented by the defendant, as he himself declares in the specification, was the means by which the knife might accommodate itself to the uneven surface of the apple.

He describes two devices. If he was then possessed of a third, he was bound to describe that also. Having failed to do so, though I do not doubt he had made machines with a flexible arm before he applied for his first patent, I have strong reason to doubt whether it was capable of effecting the object proposed. It is a circumstance of some weight, also, that in the machines now built by the defendant, he has used, not the flexible arm, but a moveable or rotating arm.

If he first invented a flexible arm, as appears from the evidence in this case, and it accomplished the desired end, why does he not continue to use it?

The other modification relied on is, placing one end of the arm in loose socket where it is held by a pin, which, being smaller than the aperture through the arm in which the pin is inserted, allows some play of the arm. But this modification was tried before he took his original patent, and not being therein alluded to, nor described and claimed in the reissued patent, the same observation applies to this as to the flexible knife arm.

Respecting this device, also, Mr. Renwick says: "In the action of these machines, the socket does not commence to turn or drive the knife arm until one of its sides touches the end of that arm, and the spring pressing the arm down, and the surface of the apple forcing the rod upward, jam the pivot pin in its containing aperture; hence, whatever play there may be is taken up the instant the machine begins to move," etc. This difficulty is not met by the defendant. It does not appear that the attention of either of the experts produced by him was called to it. Though ingenious suggestions were made by counsel at the hearing, they have not relieved my mind from the very serious doubt I entertain whether this device is capable of accomplishing, or in any material degree aiding in the accomplishment, of what is effected by the plaintiffs' improvement.

Not being satisfied that the defendant was the earlier inventor of the thing patented by the plaintiffs, or that the thing patented by the defendant is the same, in substance, as the thing patented by the plaintiffs, this ground of defense to the motion fails.

In the case of Sargent v. Seagrave, in Rhode Island, I had occasion to state my views concerning the prima facie title of the plaintiffs, founded on their exclusive possession of the thing ·patented. I have heard nothing in this case which has changed those views, or shown them to be inapplicable to this patent.

Within a period of less than five years, the plaintiffs have made and sold upward of one hundred and eighty thousand machines containing this patented improvement, at a profit of about thirty-five cents on each machine. This must be a very large profit. Though some attempts have been made to interrupt their exclusive possession, they have been successfully resisted. It appears that some person who had a contract under which he might become interested in the defendant's patent, gave notice to a person who was selling some of the machines made by the plaintiffs, that they infringed the defendant's patent; but the notice was in no way followed up, and when the defendant himself began to use the plaintiffs' improvement, these proceedings were promptly commenced.

It has been argued that the consumer of an article bought at so small a price, does not really acquiesce in the title of the patentee, though he pays him more than another could afford to sell for; because the difference which goes to the patentee as a premium for his exclusive right, is too small, in each instance, to be a matter of any importance to the consumer. I am not satisfied that this is true; for I believe a diminution of ten, or even five per cent. in the cost of an article like this, would very soon drive all other competitors out of the market, or compel them to reduce their price; consumers being more attentive than is supposed, to even small differences of cost.

But however this may be, I can not doubt that there are very many makers, and wholesale vendors of similar things in New England, whose interest would be substantially promoted by participating in this business, and whose acquiescence in the plaintiffs' title is of as much weight as in any case with which I have been acquainted.

My opinion is that the plaintiffs are entitled to a temporary injunction, to be continued until the action at law can be tried, or until the further order of the court; but I shall hold the plaintiffs to the utmost diligence in bringing the action at law to trial at the October term of the court.

I should have preferred to have reserved all my views touching any matters of fact involved in this motion, until after the trial at law; and I did so in the case in Rhode Island. But the parties having chosen to bring the whole matter of fact again before me, and to have it elaborately heard, I have considered it necessary to explain to some extent, the views I have taken of what must ultimately be submitted to a jury.

Let an injunction issue, to be continued until the further order of the court.

[For other cases involving this patent, see Cases Nos. 12,364 and 12,365.]